### Henry H. Van Meter v. George H. Lambert.

1. VERDICTS—*Where They Will Not Be Set Aside.*—A verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize a verdict, notwithstanding it may appear to be against the strength and weight of the testimony.

2. APPELLATE COURT PRACTICE—*Abstract Should Show Error Complained Of.*—It is the long-settled practice in this state that the abstract should show any error of which complaint is made.

Account Stated.—Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed December 11, 1902.

WILLIAM G. CLARKE and GEORGE R. JENKINS, attorneys for appellant.

O'DONNELL & COGHLAN, attorneys for appellee; HENRY D. COGHLAN, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellee sued appellant to recover an amount claimed to be due on an account stated, for stenographer's services. The declaration was the common counts and the pleas general issue and the statute of frauds, alleging that the promises set up in the declaration were special promises to pay the debt of another person, to wit, J. H. Poage, receiver, and were not in writing, signed by defendant, or by any other person by him authorized. A trial resulted in a verdict for appellee of $497.75, on which, after a remittitur of $59.50, judgment was rendered for $438.25 against appellant, from which this appeal is taken.

We decided this case early in the term, the opinion being filed October 27, 1902; but a rehearing having been granted, we have again carefully read the evidence in the light of the petition for rehearing, and the answer thereto, as well as the original arguments.

To consider in detail the numerous points of error on the trial, twenty-seven in number, made by appellant's counsel, would require a very long opinion. The large number of causes awaiting disposition in this court compels us to state our conclusions in the most general way in many cases. Especially is this true when, as in this case, the merits of the controversy and the importance of the questions involved do not, in our opinion, justify extended and detailed consideration. We therefore refrain from a disposition of the numerous points *seriatim*, though they have been given all the consideration which the time at our disposal and a due regard for other public interests will permit.

The plaintiff relied wholly on the claim of an account stated. He testified to the services sued for, they being rendered in February, 1897, in the case of Barron for the use of Poage, Receiver, v. Burke. No controversy is made but that the services were rendered and that they were worth the amount for which the judgment was entered. Appellant's defense was that he never employed appellee to do the work in question, and never promised to pay therefor; also that, if he promised to pay, the promise is void under the statute of frauds.

The Barron case, as it appears, was tried twice; once before Judge Neely and once before Judge Smith of the Circuit Court. Just what appellant's interest in or connection with that case was, does not appear, except that on the trial before Judge Neely he employed appellee to report the case and paid him for his services, and the testimony on the part of the defense tends to show that plaintiff had negotiations with defendant with the view of plaintiff's securing the reporting of the case on the trial before Judge Smith. The services sued for were for reporting the case when tried before Judge Smith. There is no direct evidence of a

contract between appellant and appellee, by which the latter was employed by appellant to do this reporting. Appellee had, however, been employed and paid by appellant for reporting the case on the former trial before Judge Neely. Appellee's book of account kept by him, and in which the different items of the services sued for were entered immediately after they were rendered, was offered in evidence. This book shows the account in question, amounting to $438.25, is charged to appellant. The first item on the page of the book containing this account is a balance of $6 of a previous account against appellant in the Barron case, which account appears to have been paid between two and three months before the date of the first item in the account in question. Plaintiff testified that on the 16th or 17th day of February, 1898, a day or two after all the services had been rendered, he had a conversation with defendant in regard to the account, in which the following occurred, viz.:

" Van Meter said to me, ' Mr. Lambert, I must owe you quite a bill.' I said, ' Yes, Mr. Van Meter, it is over $400. I will show you the account.' I opened my desk, took out this ledger, and spread it out on desk. Mr. Van Meter looked at the account long enough to see items. We had more conversation."

This further conversation is detailed by the witness, in the course of which he says that he asked appellant to pay him some money on the bill, to which appellant replied, as witness states, that " he had no money with him, but would do best he could to get me the money before the first of the month, in substance."

Plaintiff further testifies to repeated subsequent interviews with appellant in regard to the claim, in which he says, in substance, appellant either promised to pay as soon as he could raise the money, or would pay out of the first money he could get, and at one time that appellant offered him a note for $225 to get discounted, and told plaintiff that if he could get the note discounted he could apply a part of it on appellant's account.

This is in substance all of plaintiff's evidence, except

some relating to another item of $59.50, which was remitted from the verdict.

The defendant testified, in substance, that he did not employ plaintiff to report the case, did not see plaintiff's book of account, and never, at any time, promised plaintiff to pay the account or any part of it. He admits that he saw plaintiff in regard to the $225 note, but says that he told plaintiff he got the note from Barron and that if he, plaintiff, would negotiate the note he might have Barron's interest to apply on the bill Barron owed him, plaintiff. He also testified that in a conversation with plaintiff in regard to reporting the case before Judge Smith, he told plaintiff that if plaintiff reported the case, he must do it "at his own risk, and he would get his pay only from result of suit, not out of me," and that plaintiff said he "would take it and run his own risk." This alleged conversation is denied by plaintiff.

As to the account stated and what occurred between plaintiff and defendant with reference thereto, there is no evidence except the testimony of plaintiff and his book account on the one side, and the testimony of defendant and one Montague and one Raymond on this point, on the other. Montague testified in substance that he heard a conversation between defendant and plaintiff in September, 1900, in which the latter said that he was "sorry he had sued Van Meter, as he did not believe Van Meter was personally liable. * * * He knew that Van Meter was not personally indebted to him." Defendant testifies to the same conversation in substance. Plaintiff denies that any such conversation ever occurred. Raymond testifies to a conversation in August, 1900, between plaintiff and defendant, in which witness says plaintiff said "he was sorry he had sued Van Meter." This, also, is denied by plaintiff.

The evidence of the witnesses Raymond and Barron also corroborates defendant as to his claim that plaintiff agreed to report the case of Barron v. Burke at his own risk, and get his pay from the result of the trial, not from him,

Van Meter v. Lambert.

defendant. The testimony of Raymond is to an alleged admission of plaintiff to the effect claimed after suit was commenced for the same claim in the Circuit Court, and which had been tried before Judge Baker in March, 1899. Barron's testimony relates to a conversation between defendant and plaintiff, which he says he overheard before the services were rendered. This evidence does not bear directly upon the crucial point of the case, viz., as to whether there was an account stated between the parties. The evidence of Raymond being as to an alleged admission of appellee after the litigation had been commenced, should be received with great caution. Such evidence has been repeatedly characterized by the courts and text writers as being very unreliable. Excluding his testimony on this point, as the jury might well have considered it of little weight, we have the appellant and Barron as against appellee.

Appellant admits that appellee several times asked him to give his note for the claim in suit, and says that he always refused, but he fails to say, except indirectly, that he repudiated any liability to appellee. He is very explicit in saying that he never promised appellee to pay him the bill at any time, and never " admitted his obligation to pay it at any time since services rendered." Did he admit his obligation to pay it before the services were or while they were being rendered ? By so limiting his answer the jury may have thought he had at some time admitted his obligation. In this connection, on cross-examination, he says : " I refused, saying I did not give notes for myself, and would not give them for anybody else." The jury may have thought, as they well might, his testimony was not inconsistent with appellant's having obligated himself to pay appellee; since he failed, when asked to give his note, by strong and outspoken words to repudiate appellee's claim. A man of spirit would most naturally, when called on repeatedly, as he says he was, to pay or give his note for a claim he did not owe, have used strong language repudiating the claim, though it is more probable his indignation would have taken a more violent form.

Barron does not, as appellant does, testify to any contract between appellant and appellee that the latter would report the case at his own risk, and he would get his pay only from result of suit, not out of appellant. He says, in effect, that appellant so declared during the conversation with appellee testified to by appellant, but that appellee ' did not at the time give direct answers, whether he would or not." Appellant says appellee stated he "would take it (the case) and run his own risk." In view of this material difference and the other evidence of appellant referred to, the jury, seeing the witnesses, may have believed the appellee and disbelieved the appellant and Barron. We can not say their verdict, having received the approval of the learned trial judge, was manifestly in the wrong in this regard.

On the matter of the account stated, we have appellee and his book account, as opposed to appellant and the witnesses Raymond and Montague, who only testify to alleged admissions, above referred to, of appellee after suit brought in the Circuit Court on this claim, each to a separate admission. For the reason above stated as to such admissions and the fact that their evidence does not bear directly upon the main point of the case, namely, whether there was an account stated, the testimony of these two witnesses may be considered of slight weight. After a careful reading of the evidence, we can not say the jury was clearly wrong in finding for appellee.

On the petition for rehearing it has been urged and argued with great force that appellee's case is supported only by his own testimony; that it is met squarely by that of appellant, who is corroborated by three unimpeached witnesses, and therefore, under the authority of Peaslee v. Glass, 61 Ill. 94, and numerous cases of this court in the same line, it follows the judgment must be set aside and a new trial awarded. We think what has been said is sufficient to show that in our opinion, at least, the rule invoked should not here apply. The matters we have mentioned we think are, to use the language of the court, "elements

Van Meter v. Lambert.

of probability" sufficient to turn the scale. In any event they distinguish this case from the Peaslee case.

After a most careful second consideration of the evidence in the cold type, we think we would have reached a different conclusion from that of the jury. This, however, is not enough to justify us in disturbing the verdict. We must consider the record, remembering that the jury, in reaching its conclusion, and the trial court in passing upon the motion for new trial, were in much better position than we are to pass upon the credibility of the witnesses and the weight to be given their testimony. When the whole evidence is viewed in this light, we are unable to say we should have reached a different result from the jury, and think its verdict should stand. The law in this regard is quite fully reviewed in the late case of Bradley v. Palmer, 193 Ill. 15–88, in which, although the verdict of the jury in a will contest was set aside as being "against the clear weight and preponderance of the evidence," the court holds that the rule in such cases is the same as at law, and in answering the question as to what is the rule in law cases in respect to granting new trials on the ground that the verdict is contrary to the evidence, say, citing numerous cases, the last being R. R. Co. v. Gillis, 68 Ill. 317:

" The case last mentioned contains, perhaps, as clear and apt a statement of the rule, if not more so, than any of them. It is there said : 'If any rule of court can be so well established as to be neither questioned nor require citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize a verdict notwithstanding it may appear to be against the strength and weight of the testimony.' "

The claim of appellant that there is no sufficient evidence to show previous transactions between the parties creating the relation of debtor and creditor between them, is, we think, untenable. What has been stated as to past transactions between appellant and appellee is, in our opinion, a sufficient basis for the account stated here in question.

No evidence offered by appellant tends to support his plea of the statute of frauds, and there is no evidence in the record which tends to show that any other person than appellant is indebted to appellee for the services sued for.

Each of the court's rulings on the exclusion and admission of evidence has been considered, and we find no cause for reversal in any of them. They relate principally to an item of $59.50, which was remitted from the verdict, and all prejudice, if there was error in the respects claimed, was thereby, in our opinion, obviated.

Certain instructions requested by appellant were modified, and given in the modified form, while others were refused. Complaint is also made of certain instructions given for appellee. None of the instructions given for appellee and only two out of five instructions given for appellant are abstracted. The same is true of eight of appellant's refused instructions.

It is the long settled practice, both in this court and in the Supreme Court, by repeated decisions, that the abstract should show any error of which complaint is made. The given instructions not being shown, we can not tell but that the jury was fully and fairly instructed thereby. The refused instructions not being shown, it does not appear but that they were properly refused.

No sufficient reason appearing why the judgment should be reversed, it is affirmed.